NO. 4-06-0244          Filed 8/13/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| DEMETRIC L. DeBERRY, | ) | No. 05CF1371 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Timothy J. Steadman, |
| | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

In December 2005, a jury convicted defendant, Demetric L. DeBerry, of robbery (720 ILCS 5/18-1 (West 2004)).  The trial court later sentenced him to five years in prison.

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt, and (2) the trial court erred in not ruling on his motion in limine, prior to his testimony, as to whether his prior convictions could be used to impeach him.  We affirm.

In October 2005, the State charged defendant with robbery (720 ILCS 5/18-1 (West 2004)), alleging that on August 18, 2005, he knowingly took property from Steven McDonald by use of force.  Prior to trial, defendant filed a motion in limine to bar the State from impeaching him with "certain of [his] prior convictions."  The trial court reserved ruling on the motion "until or unless the defendant testifies and [the] State then

seeks to introduce the two convictions by way of rebuttal."

At trial, Steven McDonald testified that on August 18, 2005, he walked from his girlfriend's house to a friend's house. While walking, McDonald stopped and spoke with defendant, whom he knew only as "Mi Mi." Another individual approached and grabbed McDonald's front pocket. McDonald "swung" at the individual but defendant grabbed McDonald from behind and the other individual lifted McDonald's legs and the two men threw McDonald to the ground. One of the individuals kicked McDonald. McDonald observed the two men run from the area.

Tyrell Woods testified that he pleaded guilty to robbing McDonald. He and defendant were no longer best friends because defendant "told on" Woods. According to Woods, he and defendant agreed to "basically [']roll['] [McDonald]."

Decatur police officer Kara Diskey testified that on August 18, 2005, she was dispatched to 143 East Marietta Street in Decatur. Diskey spoke with McDonald and McDonald provided descriptions of the two men involved. McDonald knew one of the individuals as "Mi Mi."

Decatur police officer Jeremy Welker testified that on August 23, 2005, he met with McDonald and conducted a photo-graphic lineup. McDonald "immediately" identified defendant and Woods as the individuals who robbed him on August 18, 2005.

The State then rested, and the trial court denied

defendant's motion for directed verdict.  Defendant renewed his motion in limine, arguing the outcome of the motion would impact his decision on whether to testify.  The trial court refused to rule on the motion in advance of defendant testifying, stating the motion was premature.

Defendant then testified as the only defense witness, admitting that he spoke with McDonald on August 18, 2005, but stating he did not know McDonald.  Defendant testified that McDonald asked whether there were "some nice cars around for sale."  According to defendant, during this conversation, "Woods came from out of nowhere."  Defendant and Woods were friends. Defendant testified that McDonald took a swing at Woods because he did not know what Woods was trying to do to him. Defendant testified that after McDonald swung at Woods, defendant grabbed McDonald because he "didn't want him to try to harm anybody that I had knew."  Defendant testified that he let McDonald go "immediately" and observed Woods take a cell phone and money from McDonald's pocket.  After this incident, defendant gave Woods a ride home.

Following arguments, the trial court denied the motion in limine and the State offered the certified convictions of defendant for theft and aggravated battery.  The jury convicted defendant of robbery and the court later sentenced him to five years in prison.

This appeal followed.

Defendant first argues that the State's evidence failed to prove his guilt beyond a reasonable doubt. Specifically, he contends that he was convicted "on the basis of unreliable and conflicting stories."

In People v. Collins, 214 Ill. 2d 206, 217, 824 N.E.2d 262, 267-68 (2005), the supreme court addressed a challenge to the sufficiency of the State's evidence and wrote the following:

"We review a challenge to the sufficiency of the evidence to determine '"whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' (Emphasis omitted.) People v. Cox, 195 Ill. 2d 378, 387[, 748 N.E.2d 166, 172] (2001), quoting Jackson v. Virginia, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979). We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt. [Citation.] In reviewing the evidence, it is not the function of the court to

retry the defendant, nor will we substitute our judgment for that of the trier of fact."

In People v. Cunningham, 212 Ill. 2d 274, 818 N.E.2d 304 (2004), the supreme court addressed a defendant's attack on the sufficiency of the State's evidence based on his claim that the testimony of a particular witness was not worthy of belief. In so doing, the court discussed the reviewing court's role as follows:

"The reviewing court must carefully examine the record evidence while bearing in mind that it was the fact finder who saw and heard the witness. [People v.] Smith, 185 Ill. 2d [532,] 541[, 708 N.E.2d 365, 369 (1999)]. Testimony may be found insufficient under the Jackson standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt. See, e.g., Smith, 185 Ill. 2d at 545[, 708 N.E.2d at 371] (holding that no reasonable person could find the witness' testimony credible) *** ." Cunningham, 212 Ill. 2d at 280, 818 N.E.2d at 308.

Judged in accordance with the foregoing standards, we conclude that the evidence was sufficient to sustain defendant's

conviction. In so concluding, we note defendant admitted (1) he spoke with McDonald on August 18, 2005, (2) Woods "came from out of nowhere," (3) he grabbed McDonald restraining him, (4) he observed Woods remove the cell phone and money from McDonald's pocket, and (5) he "walked off." Thus, the jury could have found beyond a reasonable doubt that defendant committed the offense of robbery.

Defendant next argues that the trial court erred in not ruling on his motion in limine, prior to his testimony, as to whether his prior convictions could be used to impeach him.

We note defendant does not argue the trial court failed to apply the proper balancing test (see People v. Montgomery, 47 Ill. 2d 510, 268 N.E.2d 695 (1971)) and does not argue the court abused its discretion in determining to admit the two convictions for impeachment purposes. The only issue before us is whether the court erred in not ruling on the motion in limine prior to defendant testifying.

Because a motion in limine typically asks the trial court to bar certain evidence, the supreme court has deemed such motions "powerful weapons" and has urged caution in their use. Reidelberger v. Highland Body Shop, Inc., 83 Ill. 2d 545, 550, 416 N.E.2d 268, 271 (1981). For the same reasons that the supreme court has ruled that trial courts have discretion before granting a motion in limine, this court has held that trial

courts also possess the discretion to choose not to entertain a motion in limine at all.  See People v. Ballard, 346 Ill. App. 3d 532, 543, 805 N.E.2d 656, 665 (2004); People v. Owen, 299 Ill. App. 3d 818, 823, 701 N.E.2d 1174, 1178 (1998).

> "[A] court is fully justified to exercise its discretion by telling the moving party that[,]  for whatever reason[,] the court chooses not to entertain the party's motion in limine and instead will require the evidence in question, if it is to be offered at all, to be presented in the normal course of things during trial.  The court will then make its ruling upon the evidentiary question at issue when the matter has become ripe, assuming it ever does."  Owen, 299 Ill. App. 3d at 823, 701 N.E.2d at 1178.
> "A trial court need not make a preliminary ruling on the admissibility of a defendant's prior convictions to impeach him before they become at issue, and they become at issue only after (1) a defendant has testified, and (2) the State seeks to introduce his prior convictions for impeachment purposes in its rebuttal case."  Ballard, 346 Ill. App. 3d at

543, 805 N.E.2d at 665, citing <u>Owen</u>, 299 Ill.

App. 3d at 824-25, 701 N.E.2d at 1179.

For the foregoing reasons, the trial court did not err in refusing to rule on defendant's motion prior to his testifying.

Defendant also argues that the trial court erred in not ruling on his motion <u>in</u> <u>limine</u> prior to his testimony on the ground that defendant's constitutional right to testify at trial was violated. Defendant argues he was not provided "a fair chance to weigh the costs and benefits of the decision as to whether to exercise his constitutional right to testify."

A defendant's right to testify at trial is a fundamental constitutional right, as is his right to choose not to testify. <u>People v. Madej</u>, 177 Ill. 2d 116, 145-46, 685 N.E.2d 908, 923 (1997); see <u>Rock v. Arkansas</u>, 483 U.S. 44, 51, 97 L. Ed. 2d 37, 46, 107 S. Ct. 2704, 2708 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution"). The decision whether to testify ultimately rests with the defendant (<u>Madej</u>, 177 Ill. 2d at 146, 685 N.E.2d at 923); however, the defendant should make that decision with the advice of trial counsel (<u>People v. Smith</u>, 176 Ill. 2d 217, 235, 680 N.E.2d 291, 303 (1997)).

Here, the trial court declined to rule on the motion <u>in</u> <u>limine</u> prior to defendant testifying, and the defendant testified. Whether the trial court's failure to rule bore on defen-

- 8 -

dant's decision to testify is purely speculative. We do not agree that defendant was deprived of the information he needed to make an informed and intelligent decision about whether to testify. Defendant was certainly aware of his prior convictions and of the risk that the State might seek to impeach his testimony by introducing evidence of one or more of those convictions. The decision of whether to testify under those circumstances was that of the defendant, not the court. Even if the defense strategy was greatly influenced by the risk that the defendant would be impeached with his prior convictions, "the court was not required to remove that risk in advance." People v. Mims, 204 Ill. App. 3d 87, 96, 561 N.E.2d 1101, 1107 (1990).

The trial court's failure to rule, prior to defendant testifying, did not deprive defendant of his constitutional right to testify because defendant still had the options to testify or to choose not to testify. Regardless of the court's ruling, defendant chose to testify. Defendant's constitutional right to testify at trial was not violated.

For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we grant the State its statutory $50 assessment against defendant as costs of this appeal.

Affirmed.

KNECHT, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent and would reverse and remand for a new trial.

Imagine a case where the defendant has made the firm decision not to testify, but nevertheless files a motion to bar admission of his prior convictions. The defendant may file the motion in hopes of injecting error into the record. If the trial court rules that a conviction is admissible, the defendant may then complain that he would have testified, but for the erroneous admission of the conviction. The Supreme Court has refused to review a ruling that a conviction is admissible, unless the defendant testifies. Luce v. United States, 469 U.S. 38, 41-43, 83 L. Ed. 2d 443, 447-49, 105 S. Ct. 460, 463-64 (1984). In some cases, of course, the admission of the conviction may truly be the reason the defendant does not testify, but on balance the belief has been that defendant must testify to preserve the issue. The defendant's choice is either to accept the ruling and not testify or to testify and appeal the ruling.

Trial courts sometimes take a similar approach, that they are not going to rule on the admissibility of a prior conviction unless the defendant testifies. There is a difference, however, between an appellate court declining to review a trial court's ruling and a trial court's declining to rule. There may be no problem with the trial court's declining to rule

- 11 -

when the defendant does not testify, but there is a problem when the defendant then does testify, as in this case. At that point it is no longer "speculation" whether the defendant is going to testify, and by refusing to rule in advance the court has prevented the defendant from making an intelligent choice whether doing so is in his best interest. Refusing to rule in advance also prevents the defendant from making an anticipatory disclosure of the convictions. Anticipatory disclosure in the absence of a pretrial or trial ruling permitting admissibility constitutes a waiver of the right to raise error on appeal. People v. Williams, 161 Ill. 2d 1, 34-35, 641 N.E.2d 296, 310 (1994) (defendant entitled to attempt to minimize the damage of prior conviction evidence by introducing it himself).

A trial court's refusal to rule in advance ignores Montgomery's exhortation to trial judges to consider "above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." Montgomery, 47 Ill. 2d at 518, 268 N.E.2d at 699; People v. Phillips, 371 Ill. App. 3d 948, 952, 864 N.E.2d 823, 828 (2007).

Phillips found that the trial court abused its discretion when it refused to rule prior to the defendant's direct examination. Phillips, 371 Ill. App. 3d at 952-53, 864 N.E.2d at 828.

- 12 -

> "We cannot fathom what more the judge needed
> in order to conduct the balancing test and
> rule on the admissibility of the prior con-
> victions.  The defendant was deprived of the
> information he needed to make an informed and
> intelligent decision about whether to tes-
> tify." Phillips, 371 Ill. App. 3d at 952,
> 864 N.E.2d at 828.

Nevertheless, the Phillips court declined to review the issue because defendant did not testify.  Phillips, 371 Ill. App. 3d at 954, 864 N.E.2d at 829.  Our court has taken a similar approach.  "What more did the trial court need to know ***? *** We conclude the court should have ruled and then defendant could meaningfully consider whether to exercise his right to testify." Ballard, 346 Ill. App. 3d at 544-45, 805 N.E.2d at 666.

We affirmed in Ballard because the defendant did not testify.  The defendant in the present case, however, did testify.  What justification is there for the trial court's refusal to rule in this case?  As discussed above, the argument that a trial court needs to hear the defendant's testimony before ruling whether prior convictions are admissible has been rejected.

> "There may be times when a trial court cannot
> effectively conduct the Montgomery balancing
> test without hearing the defendant's direct

- 13 -

testimony, although it is difficult to envision that happening with any frequency.  In most cases, as was true in this case, the judge will have heard enough or been told enough to find the issue ripe for decision."  Phillips, 371 Ill. App. 3d at 952-53, 864 N.E.2d at 828.

No special reasons for refusal to rule in advance are argued in this case.  The fact that motions in limine should be used cautiously in civil cases does not justify their wholesale rejection when a Montgomery issue is raised.